IN THE MATTER OF THE PETITION OF THE SOUTH BEACH RAILROAD COMPANY TO ACQUIRE LANDS, ETC.

Under the provision of the General Railroad Act of 1850 (§ 13, chap. 140, Laws of 1850), which authorizes a corporation organized under it to. obtain, by condemnation, such lands as is "required for the purposes of its incorporation," only such and so much land may be condemned as the proper execution of the corporate purposes shall require and render necessary.

Under the provision of the Street Railroad Act of 1884 ( § 3, chap. 252, Laws of 1884), giving to a corporation organized under it the right to a contruct its road "through, along and upon any private property which said company may require for the purpose," and giving it the powers and privileges granted to corporations organized under the General Railroad Act, conceding that a street railroad corporation has power to condemn lands of a private owner in some cases and for some purposes, as to which *quære*, the purposes are those, and those only, which the law of its organization describes and defines, and which are certified to in its articles of association ; those purposes are limited to the construction of a street surface railroad.

Where, therefore, the articles of association of a corporation organized under the Street Railroad Act, stated its purpose to be to construct and operate a street surface railroad through certain specified avenues in the village of E., and the corporation subsequently filed a map of its intended route, which was not along the specified streets, but was located upon private property outside of the streets for nearly the whole distance, *held*, the corporation had no right to condemn the lands upon which the proposed route was located, as they were not required for the purposes of its incorporation; that while a right to change the specified route might exist, this did not authorize a change which involved not only a contradiction and violation of the articles of association, but also of the character and quality of the corporation.

Reported below, 53 Hun, 131.

(Submitted January 13, 1890 ; decided January 21, 1890.

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made the second Monday of May, 1889, which affirmed an order of Special Term denying the application of the petition for the appointment of commissioners to appraise the compensation for lands sought to be taken by the petitioner.

The facts, so far as material, are stated in the opinion.

*Daniel G. Thomson* for appellants. It is a forced construction of the word "acquire" to limit it to acquisition by gift or voluntary purchase. (Laws of 1850, §.13.) The section of the Constitution relied on as the chief point in opposition to this application has been amply construed by the Court of Appeals and the Supreme Court, and in such a way as to deprive the objection made in the present case of all its force. (*People* v. *Learned*, 5 Hun, 626; *People* v. *Hoyt*, 7 id. 39;

*People* v. *Banks*, 67 N. Y. 569; *In re R. W. Works*, 2 Wkly. Dig. 416; *In re N. F. Co.*, 98 N. Y. 139–157; *People* v. *Squire*, 107 id. 593.) If the authority to condemn land is constitutionally vested in a street surface railroad company, the manner in which such right is to be exercised must be that provided in the General Railroad Act, except as modified by the Street Railroad Act. (Laws of 1884, chap. 252.) No filing of a general map of location was in the present case required by law. (*C. I. & B. R. R. Co.*, 12 Hun, 451; *Mason* v. *B. C. & N. R. R. Co.*, 35 Barb. 380; Laws of 1884, chap. 252, § 3.) If a map of location was necessary, the map filed January 19, 1889, was fully sufficient. (*Mason* v. *B. C. & N. R. R. Co.*, 35 Barb. 364; *Hunt* v. *Smith*, 9 Kan. 137.) It is possible to consider the map as a supplement to and a part of the original location, or as a change of route. If the former theory be the correct one, the map, though unnecessary, is yet an ample notice to the party whose lands are to be taken, and afforded full opportunity to object in any legal way. By her failure to apply to the Supreme Court for the appointment of commissioners the respondent waived her right of objection to a location through her premises. (*In re N. Y. & B. R. R. Co.*, 62 Barb. 85; *In re L. I. R. R. Co.*, 45 N. Y. 364; *In re C. R. R. Co.*, 1 T. & C. 421; *N. Y. & A. R. R. Co.* v. *N. Y., W. S. & B. R. R. Co.*, 11 Abb. [N. C.] 386; *In re R. H. & L. R. R. Co.*, 110 N. Y. 128.) Even if the location through Mrs. Byrnes' land be considered a change of route, it is good and sufficient. (Waterman on Corp. 365, 366; *Palmer* v. *Gates*, 3 Sandf. 137; *M., etc., R. R. Co.* v. *Fisk*, 33 N. H. 297; *In re B. S. R. R. Co.*, 34 Hun, 414; *In re N. Y. B. Co.*, 67 Barb. 295; *In re Thirty-fourth St. R. R. Co.*, 102 N. Y. 347.) There were no other prerequisites to condemnation proceedings than those hereinabove cited, neither consents of property owners nor a consent of the municipal authorities, though as a matter of fact both have been obtained. The taking of the property in question will be for a public use. (*In re N. F. & W. R. R. Co.*, 108 N. Y. 378.) When the power of eminent domain has

undoubtedly been conferred by a statute, then in so far as it attempts to define the location or route it is to receive a reasonable rather than a strict construction. (Lewis on Eminent Domain, § 25 ; *In re N. Y. C. R. R. Co.*, 40 Hun, 1.)

*W. W. MacFarland* for respondent. The petitioner has not taken the steps necessary to entitle it to condemn the respondent's property. (*In re Boston*, 10 Abb. [N. C.] 104; *New York* v. *Goodwin*, 12 Abb. [N. S.] 21 ; *New York* v. *New York*, 11 Abb. [N. C.] 386). No power to condemn land is given by the statute. (Lewis on Eminent Domain, §§ 240, 253, 254.) The act of 1884, which refers to and incorporates the General Railroad Law, is unconstitutional and void. (Const., art 3, § 17.) The property in question is not required as a public use. (Const., art. 1, § 6; *In re N. F. & W. R. R. Co.* 108 N. Y. 375.)

FINCH, J. The petitioner seeks to condemn land for the purposes of its railway, and its right to do so is here in controversy. It was organized under the act passed May 6, 1884, entitled " An act to provide for the construction, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages," and became a corporation by force of that act. The corporators assumed the name of the South Beach Railway Company, and certified the objects of the corporation to be to construct and operate a street surface railway from the Arrochar station of the Staten Island Rapid Transit Railroad Company on Richmond avenue in the village of Edgewater, along Richmond avenue to Sea avenue, along Sea avenue to the Boulevard parallel with the south beach, and thence along that Boulevard " to a point at or near Bergman's hotel," the whole distance being about one mile. It does not now propose to build that line, or indeed to build a street railroad at all. It has filed a map of its intended route which crosses Richmond avenue, but does not run through or along it, which does not touch Sea avenue at any point, which is located upon private property and out of the streets for the

whole distance from its starting point until it reaches the Boulevard, along which it goes for a short distance to the hotel at which it ends.    This new line is located almost wholly upon the land of Mrs. Byrnes, which it is now sought to condemn, and the proceeding is defended upon the ground that the act of 1884 authorizes a construction not only upon and along streets and avenues, but also " through, along and upon any private property which said company may acquire for the purpose; " and also upon the ground that the act confers upon the corporations formed thereunder all the powers and privileges granted by the General Railroad Act of 1850, and so the right to change the selected route from streets and avenues to private property, and condemn the land along the new line is given.

We need not stop to discuss the constitutional question raised by the reference to the act of 1850, or deny for present purposes the right of a street railway to condemn in some cases and for some uses the land of a private owner, since admitting all that, without so deciding, we are yet of opinion that this proceeding cannot be maintained.

Section 13 of the act of 1850, allows any corporation organized thereunder to obtain by condemnation such land as is " required for the purposes of its incorporation." The power is not general or unlimited. The company cannot condemn what it pleases, but only such and so much land as the proper execution of its corporate purposes shall require and render necessary. What then were the purposes of the incorporation of the South Beach Railroad Company ? Obviously, they are those and those only which the law of its organization describes and defines, and which are certified in its articles of association, operating, when filed, as its charter and the measure of its authority. Referring to those we see that the corporate purposes were not to build a railroad between specified termini by the most feasible route, which is the characteristic of an ordinary railroad, but to build and operate a street railroad, such as the act of 1884 contemplates and regulates; and not only that, but one running along three specified avenues in

the town of Edgewater and not at all through or along private property. Such are the prescribed and declared purposes of the incorporation, and the company, it may be conceded, might have the right to acquire by condemnation such and so much of private property as should be reasonably necessary to accomplish those purposes. Now the chief element of a street railway, as authorized by the act of 1884, is that it is built upon and passes along streets and avenues for the convenience of those living or moving thereon. Its fundamental purpose is to accommodate the street travel, and its motive power is dictated and regulated to that end; and while, consistently with its general object, it may need for switches or storage, or stables or stations the land of private owners, yet that necessity is only incidental to the main purpose of a line along the streets accommodating the street travel. Here the land of Mrs. Byrnes is needed to build the main and principal part of the line, only that it may avoid the streets altogether. The act of 1884 stamps an indelible mark upon the corporations which it organizes. The consent of the local authorities is to be obtained, and that of a certain portion of the abutting owners, or in default of the last the certificate of chosen commissioners. Every step of the way, through all the conditions of the act, it plainly contemplates a railway along the streets and avenues of a village or city. The petitioner chose to organize under that act, to build and operate the kind and character of railway which it contemplated, to declare in precise terms that the objects of its incorporation were exactly those of a street railway along named avenues of the village of Edgewater. It is very plain, therefore, that none of the land of Mrs. Byrnes is required for the purposes of its incorporation by the South Beach Railway Company, but that the property is wanted to enable the company to disown and abandon those purposes and cease to be a street railway at all. If we upheld this contention, it might be possible to build a street railway for a city along a hundred feet of a street and then condemn the land in the center of the blocks all the way to its terminus. A change of route is possible under the act of 1850, where, as is usually

the case, freedom to change exists under the charter, but where a change of a route involves not only a contradiction and violation of the articles of association, but also of the character and quality of the corporation, it becomes more than a mere change. It follows that since the land sought to be condemned is not required for the purposes of the incorporation, but to enable those purposes to be substantially abandoned, the proceedings cannot be upheld.

The order of the General Term should be affirmed with costs.

All concur.

Judgment affirmed.