## COTULLA v. LA SALLE WATER STORAGE CO.

(Court of Civil Appeals of Texas. San Antonio. Jan. 29, 1913. Rehearing Denied Feb. 19, 1913.)

1. APPEAL AND ERROR (§ 554*) — RECORD — STATEMENT OF FACTS—NECESSITY.
   Where there is no statement of facts on appeal, the trial court's conclusions of fact and law will be adopted by the Court of Civil Appeals.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2472–2479; Dec. Dig. § 554.*]

2. EMINENT DOMAIN (§ 10*) — IRRIGATION COMPANIES—RIGHT OF EMINENT DOMAIN.
   Under Rev. Civ. St. 1911, art. 5002, providing that corporations may be formed under that chapter, or under the general laws of the state, for the purpose of constructing, maintaining, and operating canals, ditches, etc., and of conducting and transferring water for irrigation, mining, etc., and article 5004, providing that all corporations and associations formed for the purpose of irrigation, etc., as provided in that chapter, may obtain the right of way over private lands, and also land for dams and reservoirs, by condemnation, a corporation formed under Rev. St. 1895, art. 642, subd. 23, providing that corporations may be formed for the construction, maintenance, and operation of dams, reservoirs, etc., and other necessary appurtenances, for the purposes of irrigation, navigation, etc., is entitled to acquire land by eminent domain proceedings.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35–48; Dec. Dig. § 10.*]

3. EMINENT DOMAIN (§ 29*)—STATUTORY PROVISIONS.
   The act of 1895, c. 21 (Rev. Civ. St. 1911, art. 4991 et seq.), authorizing the appropriation of waters of streams in those portions of the state in which, by reason of insufficient rainfall, irrigation is beneficial, and authorizing corporations formed for the purpose of irrigation to acquire a right of way and land for dams and reservoirs by condemnation, is not invalid because of the failure to provide a method for determining what portions of the state are arid, and what amount of land is necessary, since these questions are determinable by the courts, especially in view of the provision that the property should be condemned as is prescribed in the case of railroads, and the requirement of Rev. Civ. St. 1911, art. 6506, applicable to railroads, that if the company and owner cannot agree upon the damages, the company shall state, in writing, the property sought to be condemned, the object for which it is sought to be condemned, the name of the owner and residence, and file such statement with the county judge, to enable the court to determine if the property is necessary for the purposes of the corporation.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 76; Dec. Dig. § 29.*]

4. EMINENT DOMAIN (§ 29*)—STATUTORY PROVISIONS.
   Neither the act of 1895, c. 21 (Rev. Civ. St. 1911, art. 4991 et seq.), authorizing irrigation companies to acquire land by condemnation, nor Rev. St. 1895, art. 704, authorizing canal corporations, for the purpose of irrigation to condemn lands necessary for their uses and purposes, violates Const. art. 1, § 17, providing that no person's property shall be taken, damaged, or destroyed for public use without adequate compensation being made, unless by his consent.
   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 76; Dec. Dig. § 29.*]

Appeal from La Salle County Court; C. C. Thomas, Judge.

Condemnation proceeding by the La Salle Water Storage Company against Joseph Cotulla. From the judgment, defendant appeals. Affirmed.

Templeton, Brooks, Napier & Ogden, of San Antonio, for appellant. Hicks, Hicks & Teagarden, of San Antonio, for appellee.

FLY, C. J. Appellee, a corporation formed under the laws of Texas for the purpose of constructing, maintaining, and operating dams, reservoirs, lakes, wells, canals, flumes, laterals, and other necessary appurtenances, to be used for irrigation, navigation, milling, mining, and stock-raising purposes, instituted proceedings before the county judge of La Salle county to condemn two certain tracts of land belonging to appellant, the first being one-half an acre, desired for a dam site, and the second 3¾ acres, desired for a storage reservoir site. The statutes as to condemnation were strictly followed, and the commissioners assessed appellant's damages at $168.75. Appellee deposited the amount with the county clerk and filed the bond required by statute. Appellant filed his exceptions to the report of the commissioners, and on a trial before the county judge the damages were assessed at $175, and judgment rendered in favor of appellee for recovery of the land sought to be condemned.

[1] There is no statement of facts, and consequently the conclusions of fact and law of

the county judge must be adopted by this court.

[2] The county judge found that the appellee was incorporated on January 22, 1910, under the authority of subdivision 23, art. 642, Revised Statutes of 1895, which provides that corporations may be formed for "the construction, maintenance and operation of dams, reservoirs, lakes, wells, canals, flumes, laterals and other necessary appurtenances for the purpose of irrigation, navigation, milling, mining, stock raising and city waterworks." Through the first and second assignments of error, the claim is advanced that the condemnation proceedings are void, because the right of condemnation is not conferred on corporations organized under article 642 by subd. 6 of article 704, Rev. Stats. of 1895; the rights granted in that article being to canal companies only. The latter part of the proposition as to article 704 need not be discussed, because, whether well founded or not, appellee has the right of eminent domain conferred upon it by the law of 1895 (Laws 1895, c. 23), embodied in articles 5002 and 5004, Revised Statutes of 1911.

In article 5002 it is provided: "Corporations may be formed and chartered under the provisions of this chapter and of the general laws of the state of Texas for the purpose of constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes and wells, and of conducting and transferring water to all persons entitled to the same for irrigation, mining, milling, to cities and towns for waterworks and for stock raising, and for the purpose of building storage reservoirs for the collection and storage of water for the purposes before mentioned." Then follow the powers given and restrictions placed upon such corporations; among the former being the power to condemn land for dam sites and storage reservoirs. We think that a proper construction of the statute is to confer the right of eminent domain, not only on corporations formed under the act of 1895 and the general corporation laws together, but upon those incorporated under either; and that a corporation formed under the provisions of subdivision 23, art. 642, Revised Statutes, has the same power of eminent domain as one organized under the act of 1895.

In the case of Borden v. Rice & Irrigation Company, 98 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640, the court held that the company was incorporated under articles 642, 704, and act of 1895; the purpose of its incorporation being identical with the purposes of appellee, evidently copied from subdivision 23, herein mentioned. In that case it was contended, as in this, that only canal corporations are the recipients of the power granted by article 704, and the court said of articles 642 and 704 and the act of 1895: "Those laws are, by the provision of the twelfth section of the act of 1895 [Laws 1895, c. 21], connected together and made to constitute the body of the law upon the subject of the utilization of water for the promotion of the several industries of which they treat. Those industries, as specified in article 642 and the act of 1895, are the same, except that the former includes navigation, which is omitted from the latter. The twelfth section of the latter, however, provides that corporations may be formed under it and the general corporation laws for the purpose of constructing the named works for the specified purposes; and we think there is found in this legislation itself a refutation of this contention." In other words, all the irrigation laws of Texas must be construed together. as forming one whole, and incorporation under one gives all the rights and powers of both.

The language of the charter, found in the conclusions of the trial judge, shows that the company was incorporated, not only under the provisions of article 642, but under those of the act of 1895, as is clearly held in the Borden Case, where the company. was formed under the terms of article 642, as it is stated it was formed, in the brief of plaintiffs in error found in the report of the case. 98 Tex. on page 496, 86 S. W. 11, 107 Am. St. Rep. 640.

In the Borden Case, when before the Court of Civil Appeals of the First district, it was held that article 704 conferred the power of eminent domain upon corporations organized under subdivision 23, art. 642, for some purposes at least; and the Supreme Court affirmed that decision.

[3, 4] It is contended, through the fifth, sixth, seventh, and eighth assignments of error, that the act of 1895 is unconstitutional and void, because the right of eminent domain conferred by it is confined to the arid regions of the state, because it does not determine the quantity of land necessary for the purposes named, and no method is provided for ascertaining the quantity, and because it and article 704 are violative of section 17, art. 1, of the state Constitution. We do not think that there is any question as to the statutes being valid, in so far as not providing a method for determining what portions of the state are arid, and what amount of land is necessary. Those are clearly questions of fact which can be readily ascertained in each case. The. act, nor article 704, intimates that the land for irrigation purposes should be taken without adequate compensation; and no attempt is made to deprive any citizen of his property without due process. Provision is made that the property shall be condemned as is prescribed in the case of railroads. The same provision as to taking earth, gravel, stone, or other materials, except fuel and wood, necessary for the construction of its railway, is provided for in article 6502 (4443), and in article 6504 (4445); and railway companies are authorized to condemn lands required for its depots, station buildings, for the construction of reservoirs for a water supply, and other purposes "con-

nected with or necessary to the building, operating or running its road." No amount is named in that statute, and no method for determining it is given which does not apply with equal force to irrigation companies. That law has never been questioned, although open to the same objections urged by appellant against the irrigation laws. It would be impracticable to name the amount that could be condemned for dam sites and storage reservoirs; and it would be useless and unnecessary to provide a mode of ascertaining the amount necessary, when the machinery of the courts are set in motion for that very purpose, among others.

The decisions of other states indicate that like words to those employed in the irrigation statutes, as well as the railroad statutes, as to the taking of lands necessary for "the use and purpose of the corporation," are never questioned, but land has uniformly been condemned under similar statutes in all the states of the Union. Lewis, Em. Dom. §§ 278, 279; Heyneman v. Blake, 19 Cal. 579; Titus v. Boston, 149 Mass. 164, 21 N. E. 310; In re Com'rs of Public Works, 57 Hun, 419, 10 N. Y. Supp. 705; Tedens v. Sanitary Dist., 149 Ill. 87, 36 N. E. 1033; Cheyney v. Atlantic City Waterworks Co., 55 N. J. Law, 235, 26 Atl. 95; In re South Beach R. R., 119 N. Y. 141, 23 N. E. 486; Bennett v. Marion, 106 Iowa, 628, 76 N. W. 844; Schuster v. Sanitary Dist., 177 Ill. 626, 52 N. E. 855.

When the statute does not designate the property to be taken, nor how much may be taken, the questions of what property and what portion of it shall be taken are for the courts; and the questions should be raised and decided in limine. Lewis, Em. Dom. § 393, and the long list of authorities cited. It is uniformly held that statutes giving the right of eminent domain to corporations over lands necessary for the purposes of incorporation are valid, and the question of necessity is one for court or jury. "This necessity is therefore made a judicial question, and, when controverted, it is obvious that the facts must, in some form, be laid before the court to enable it to decide." Railroad v. Davis, 43 N. Y. 137; Matter of N. Y. Central R. Co., 66 N. Y. 407. As said in the New York case first cited in this connection: "The plenary power of the Legislature over the subject would have authorized it to designate the particular premises which the respondent might take for its purposes. The general purpose being public, the Legislature could have defined the extent of the appropriation necessary to the public use. But this the Legislature has not attempted to do; nor has it delegated to the railroad company the power to determine the necessity for the appropriation of private property for corporate purposes. It has constituted the court a tribunal to hear and determine on the premises." The New York statute permits the acquisition of real estate for a number of purposes, and "for any other purpose necessary to the operation of such railroad," which is similar to the Texas statute under consideration. No provision is made in the New York statute for proof of necessity, nor in any other statute to which our attention has been called, and yet appellant says: "We are not unmindful of the fact that in the case at bar appellee alleged and proved the necessity for the taking of the property involved; but this does not alter the fact that the statutes do not require such proof, and that such pleading and proof on the part of appellee were purely voluntary, and do not in any manner support the validity of the statutes, which make no provision for such proof. The court had no authority to hear such evidence." No authority is given to sustain the contention of appellant, but it is contrary to all authority that we have been able to consider. Matter of Union R. R., 113 N. Y. 275, 21 N. E. 81; Pocantico Waterworks v. Bird, 130 N. Y. 249, 29 N. E. 246; Creston Waterworks v. McGrath, 89 Iowa, 502, 56 N. W. 680; Spring Valley Waterworks v. Drinkhouse, 92 Cal. 528, 28 Pac. 681; Santa Cruz v. Enright, 95 Cal. 105, 30 Pac. 197; Cheyney v. Atlantic City W. W. Co., 55 N. J. Law, 235, 26 Atl. 95; Bennett v. Marion, 106 Iowa, 628, 76 N. W. 844; Railroad v. Richardson, 86 Wis. 154, 56 N. W. 741.

In article 6506, Rev. Stats. 1911 (article 4447, Rev. Stats. of 1895), it is provided that if the company and owner cannot agree upon the damages it shall be the duty of the company to state, in writing, the real estate and property sought to be condemned, the object for which it is sought to be condemned, the name of the owner and his residence, and file the same with the county judge. There could be no reason for filing the statement as to the use to which the land is to be put, unless it had to be proved; and in several cases it has been held that the purpose must be proved, and that the use of the land cannot be diverted from that alleged and proved. Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295; Muhle v. Railway, 86 Tex. 459, 25 S. W. 607; Buford v. Smith, 2 Tex. Civ. App. 178, 21 S. W. 168; Foster v. Railway, 10 Tex. Civ. App. 477, 31 S. W. 529. The reason for compelling a statement of the use is that it may be determined if it is necessary for the purposes of the corporation that the land should be condemned; and the courts have not experienced any difficulty, such as is suggested by appellant, in finding a way in which to ascertain the necessity for the condemnation. Olive v. Railway, 11 Tex. Civ. App. 208, 33 S. W. 139.

No authority is offered by appellant upholding its contention as to the unconstitutionality of the statute in question, and we know of none, unless the statement of the learned Chief Justice of the Supreme Court,

in a dissenting opinion in the case of Imperial Irrigation Co. v. Jayne (Sup.) 138 S. W. 575, could be held to be authority. In that opinion the Chief Justice said: "If the Legislature had authority to enact the irrigation law, it is, in my judgment, of doubtful validity, because of its lack of definite provisions to govern in the appropriation of the land; but I shall not discuss that question." The dissenting opinion is an earnest protest against allowing the lands of the free schools of Texas to be converted by corporations to their own use, without money and without price; and the occasion was one that might well induce the condemnation of a law that had been so construed as to transform the grant of a right of way across public lands into a grant of hundreds, and perchance thousands, of acres of free school lands, to be used for reservoirs by irrigation corporations. But the law is not responsible for the construction put upon it by a majority of the court; and properly construed and administered, according to its letter and spirit, it has been and will be of great benefit to portions of Texas. Its constitutional force and effect have been acquiesced in too long to be open to attack now; and we think the machinery of condemnation prescribed for railway companies, and made applicable by express provision of the act of 1895 to irrigation companies, is amply sufficient for all purposes, and no complaint of its efficiency has been made during the many years of its existence.

The judgment is affirmed.